UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

CLINTON WORKS,

                 Plaintiff,             Civil Action No.: 13-12570
                                          Honorable George Caram Steeh
              v.                   Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                 Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [7, 11]**

Plaintiff Clinton Works brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, [7, 11], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **RECOMMENDATION**

For the reasons set forth below, the Court finds that Works has offered new and material evidence, and has shown good cause why that evidence was not presented in the prior proceeding.  Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [11] be DENIED, Works' motion [7] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks outright reversal and an award of benefits, and that, pursuant to sentence six of 42 U.S.C. § 405(g), the Commissioner's decision be REMANDED to the Administrative Law Judge ("ALJ") for further consideration consistent with

this Report and Recommendation.

## II.   REPORT

### A.   Procedural History

On April 15, 2010, Works filed an application for SSI, alleging disability as of October 1, 2002. (Tr. 123).  The claim was denied initially on August 30, 2010.  (Tr. 54-62).  Thereafter, Works filed a timely request for an administrative hearing, which was held on October 4, 2011, before ALJ Kathleen Eiler.  (Tr. 27-53).  Works, represented by attorney Mandel Allweil, testified, as did vocational expert ("VE") Carrie Anderson.  On October 28, 2011, the ALJ found Works not disabled.  (Tr. 10-26).  On April 17, 2013, the Appeals Council, after having received additional medical records from Works, denied review.  (Tr. 1-6).  Works filed for judicial review of the final decision on June 12, 2013.  [1].

### B.   Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.    Background

#### 1.    *Disability Reports and Plaintiff's Testimony*

Works reports that the conditions preventing him from working are lumbar/back issues and possible ruptured disk, and that he has been unable to work due to these conditions since October 1, 2002, when he hurt his back at work.  (Tr. 43; 137).  At that time, he testified that he was bedridden for a full year.  (Tr. 44).  He reported completing 11th grade over the course of six years in high school, taking special education classes.  (Tr. 138).  He was presently employed babysitting his niece while his sister went to school, which he performed eight hours a day/five days a week in his house for $158 biweekly.  (Tr. 32).   He reported seeing several doctors for his conditions and taking medications, including Oxycontin and Tylenol with codeine.  (Tr. 141-43).  He reported that his doctor wanted him to have an MRI, but could not afford it.  (Tr. 145).

He treats with a clinic that provides care to those without insurance.  (Tr. 34).

Works reported that he has difficulty with all aspects of daily functioning due to back pain that radiates to his left side, which causes frequent falling and sometimes prevents him from getting out of bed for weeks at a time.  (Tr. 166).  At times his family has to aid in all personal care, including assisting him to the bathroom.  (*Id.*).  He reported living with his mother, who was recovering from a stroke, and that they "just kind of help each other" with the assistance of other family members.  (Tr. 40).  He reported that his medications interfere with his memory and cause confusion at times.  (Tr. 168).  He reported being able to do simple cooking such as sandwiches and frozen dinners, but that at times family and friends bring food to him.  (Tr. 168). He does not perform any chores.  (*Id.*).  He can drive, but does not go out alone for fear of falling.  (Tr. 169).  He can shop in stores with help.  (*Id.*).  He talks on the phone with family and friends, but does not partake in any hobbies or outside activities due to his health concerns.  (Tr. 170-71).  Works reported he can walk 3-4 minutes before needing to rest 5-10 minutes.  (Tr. 171).  He also has trouble lifting, squatting, bending, standing, reaching, walking, kneeling, stair climbing, completing tasks and getting along with others.  (*Id.*).  He reported that he has a cane and walker prescribed by a doctor, and has a wheelchair that his mother gave him.  (Tr. 172). Works testified that a doctor had informed him that he would need at least five surgeries to correct his back, with no assurance that he would get better.  (Tr. 38).  The doctor also recommended physical therapy but Works did not believe his insurance would pay for it.  (*Id.*).

In a subsequent appeals report, Works reported that his conditions had worsened and that he now also suffered from high blood pressure.  (Tr. 180).  He testified that he cannot get his blood pressure to go down and, as a result, he has not been able to have a tooth pulled that has needed pulling for at least six months.  (Tr. 45).  Accompanying a representative brief filed

ahead of the ALJ hearing, Works also submitted several pictures of his feet, which purported to show non-healing ulcers, reported to be the result of uncontrolled diabetes. (Tr. 199-200). At the hearing, Works testified that his feet were infected on both sides, and swell up all the time. (Tr. 33; 41).[1] He testified that when his back first went out he was bedridden for a year. (Tr. 44). He testified that his highest blood sugar reading was over 1000 and that he is supposed to be taking medication for his diabetes but has not been because he cannot find someone to pay for it. (Tr. 36-37; 45).

    3.    *Medical Evidence*

        a.    *Treating Sources*

Works reported to his consultant examiner that he had been treated by a "Dr. Ononuju" shortly after his initial injury in 2002 for eight years until he lost his insurance. (Tr. 216). However, records from that doctor are not in the file. He also reported receiving an MRI, although that is also not in the file. (Tr. 216-17). The only records Works submitted are ones from the Janes Street Clinic covering a mere four appointments in 2010. Blood pressure readings from visits in January and March 2010 were on average 142/105. (Tr. 207). Blood pressure readings in April 2010 were 190-182 and 180/100 respectively. (*Id.*). Back pain ratings at these four appointments ranged between 3 and 5/10, and at times included radiation down his legs. (*Id.*). At all four appointments, the doctor noted subjective reports of back pain, radiating at time down the legs and pain in all joints, diagnosing multi-joint arthritis and spondylosis of the lumbar spine. (Tr. 210-12; 214). The doctor prescribed Percocet and ordered an x-ray which

---

[1] The record contained black and white photos of his feet which are so dark they are difficult to see. [201-02]. Works attached color copies of these photos (which were shown to the ALJ at the hearing) to his summary judgment motion. [7, Ex. 1]. The color photos show what appears to be an advanced pressure ulcer on the underside of one of Works' feet, showing a sizeable piece of exposed flesh.

indicated "[m]oderate degenerative disc interspace narrowing with modest degenerative disc vapor joint lucency seen L4-L5 disc interspace" as well as "modest degenerative spondylosis also present anteriorly at L4-L5." (*Id.*; 215). In addition, records from March 2011 reveal that Works was unable to receive a tooth extraction due to consistently uncontrolled high blood pressure. (Tr. 234).

### b.    Consultative and Non-Examining Sources

On August 11, 2010, Dr. Siva Sankaran performed a consultative physical examination of Works for the State of Michigan. Works was not in distress during the exam, although his blood pressure was 190/136, 170/110, and 170/100. (Tr. 217). The doctor noted no sensory or motor deficit. Works was able to ambulate without his cane across the room, although he limped. (Tr. 218). He could not bend over without his walker, and could not squat completely. (*Id.*). He experienced pain upon arising from squatting. (*Id.*). His lumbar area was tender and muscle spasm was present. (*Id.*). A straight leg raising test was positive in the left leg, but negative in the right. (*Id.*). He had a grip strength of 50 pounds bilaterally, and no acute arthritis was present in his knees. (*Id.*). The doctor noted that Works could sit with a cane, could bend only half way with pain and stoop and squat only a quarter of the way with pain. (Tr. 220). He could only climb one step and held the wall as well as used his cane. (*Id.*). He also had difficulty performing the heel-shin test, with left side pain. (*Id.*). His reflexes were all normal, but he had a reduced range of motion in his lumbar spine. (Tr. 220-21). The doctor noted that despite Works' uncontrolled hypertension, he reported no symptoms from it. (Tr. 218). The doctor also found that Works had "clinical evidence of lumbar degenerative disc disease with radicular symptoms in the left leg," that he "is unable to walk more than one block even with the walker," and had "difficulty with repeated bending, squatting, and lifting anything over 10 pounds." (Tr.

218-19).  She found he did not have a need for a walking aid, although in the comments section she stated "for steadiness."  (Tr. 223).

On August 30, 2010, Dr. Eric VanderHaagen, reviewing Works' records, issued a residual functional capacity assessment, finding Works capable of lifting 20 pounds occasionally and 10 frequently, standing four hours and sitting for six, with limited pushing and pulling in the lower extremities.  (Tr. 57-58).  Dr. VanderHaagen found that Works could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, could frequently balance, but never climb ropes, ladders or scaffolds.  (Tr. 58).  At the same time, Dr. VanderHaagen found that Works suffered from uncontrolled hypertension.  (Tr. 56).

Works' counsel sent him for a consultative mental evaluation with Dr. George Field.  (Tr. 225-33).  After administering a battery of tests, Dr. Field concluded that Works suffered from major depressive disorder, generalized anxiety disorder, panic disorder and post-traumatic stress disorder.  (Tr. 232).  He issued Works a Global Assessment of Functioning score of 35[2] and a poor prognosis, finding Works incapable of managing his own funds.  (Tr. 233).

### c.    Medical Records Submitted to the Appeals Council

On February 7, 2012, Works underwent an MRI of his lumbar spine per Dr. Morse that showed:

> Circumferential disc bulge, bilateral facet degenerative changes, and ligamentum flavum thickening causing segmental spinal stenosis, bilateral lateral recess, and bilateral neural foraminal narrowing at L4-L5 level.

---

[2] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas."  *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

> Circumferential disc bulge with superimposed right foraminal disc protrusion at L3-L4 level causing bilateral neural foraminal narrowing. The disc protrusion on the right side is in close proximity to the right L3 nerve root. Correlate clinically for any right L3 radiculopathy.

(Tr. 235). On May 15, 2012, Works underwent an evaluation by Dr. Jose Jurado, upon referral from Dr. Morse, which included a review of the MRI as well as an EMG. (Tr. 236-45). After conducting a full physical exam and the EMG, Dr. Jurado concluded that Works suffered from the following conditions: (1) diffuse cervical radiculopathy, moderately severe with denervation; (2) thoracic radiculopathy, moderately severe with denervation; (3) lumbosacral radiculopathy, multilevel with denervation; (4) bilateral carpal tunnel syndrome, moderately severe with denervation, superimposed with median neuropathy bilaterally; and (5) bilateral ulnar neuropathy with Guyon's, moderately severe with denervation. (Tr. 240). Dr. Jurado concluded that

> [t]he neural changes are due to severe demyelinating neuropathy with some possible myopathic issues which are mixed type of advance axonal demyelinating condition encompassing a stage where it is no longer possible by EMG to tell which is which for they are now at a late stage and chronic where all these are mixed.

(*Id.*). After further discussing the basis for his conclusions, Dr. Jurado opined that "[t]here is not therapy that could help at this time except for pain medication and management." (*Id.*).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found Works not disabled. (Tr. 10-26). At Step One she found that he had not engaged in substantial gainful activity since his alleged onset date, noting that his employment as a babysitter did not rise to the level of gainful activity. (Tr. 15). At Step Two, she found the following severe impairments: "degenerative disc disease (DDD), hypertension (HTN), obesity, depression, anxiety, and post-traumatic stress disorder." (*Id.*). She did not mention diabetes as one of Works' severe impairments, nor did she

8

specifically discuss why she did not find it to be a severe impairment. (Tr. 15-16). At Step Three she determined that none of Works' severe impairments, either alone or in combination, met or medically equaled a listed impairment, specifically considering Listing 1.04, 4.02, 4.04, 12.04 and 12.06. (Tr. 17). In making this determination, the ALJ concluded that Works has mild restrictions in activities of daily living and social functioning, and moderate difficulties maintaining concentration, persistence and pace, with no episodes of decompensation. (Tr. 18).

Next, the ALJ assessed Works' residual functional capacity ("RFC") finding him capable of performing

> less than the full range of "light" work as defined in 20 CFR 416.967(b). The claimant can stand and/or walk for no more than 4 hours per 8-hour workday. He can frequently, as opposed to constantly, push and/or pull with his bilateral lower extremities (BUE). He must use a single cane for ambulating long distances. He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs. The claimant can frequently balance and can occasionally stoop, kneel, crouch or crawl. He retains the mental capacity to perform simple, routine, and repetitive tasks.

(Tr. 19). The ALJ gave great weigh to Dr. VanderHaagen's opinion, but did not state how much weight she gave to Dr. Sankaran's opinion. (Tr. 21). She gave very little weight to Dr. Field's opinion, finding that he relied heavily on Works' subjective reports, was based in part on his physical condition, an area outside of the doctor's expertise, and the ALJ noted that the appointment was arranged by Works' attorney, not by himself or the Administration. (*Id.*).

At Step Four the ALJ found that Works was unable to perform any of his past work with the given RFC. (Tr. 21). At Step Five she concluded that there were other occupations in the national economy that Works could perform utilizing this RFC, and thus he was not disabled. (Tr. 22-23). The ALJ's conclusion was based, in part, on VE testimony that found that a claimant with the proposed RFC would be capable of performing the jobs of parking lot attendant and security gate keeper, jobs which number 3,070 and 24,170 respectively in

9

Michigan. (Tr. 22). The ALJ also noted that the VE testified that even if Works were limited to only sedentary occupations with these same restrictions, he would still be able to perform jobs such as surveillance monitor, paper inserter or tollbooth clerk, jobs which number 2,500, 31,650 and 110,430 respectively in Michigan. (Tr. 22-23).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court

10

is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

With respect to evidence submitted after the ALJ issues his opinion, generally, "[i]f the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ." *Elliott v. Apfel*, 28 Fed. Appx. 420, 423 (6th Cir. 2002) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)). However, in certain circumstances, a court may remand under Sentence Six of the Act to permit an ALJ to consider new evidence not available to him in the first instance. In order for a case to be remanded to the ALJ for the consideration of new evidence, the evidence must be new and material, and good cause must be shown as to why it was not presented at the prior proceeding. 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Evidence is considered new only if it was "not in existence or available to the

claimant at the time of the administrative proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting Elliott, 28 Fed. Appx. at 424). The Sixth Circuit has held that for new evidence to be material there must be "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). "Good cause" requires the claimant to demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster* 279 F.3d at 357.

### F.     Analysis

Here, the Court finds that Works has satisfied his burden that the evidence presented to the Appeals Council (Tr. 235-45) constitutes new and material evidence and that good cause exists for his failure to present it to the ALJ.  At least temporally, the evidence is clearly "new," as it was generated in February and May 2012 respectively, between 4 and 7 months after the ALJ's decision.[3]  The Court also finds the evidence material – the severe nature of the diagnosis in the doctor's report permits at least an argument that Works, rather than being capable of performing a limited range of light work, might possibly even meet one of the listings under Listing 1.00, such as 1.04A or C. (although the Court does not opine on whether he indeed meets one of these or another listing).[4]  While the doctor's opinions, rendered in 2012, may not permit

---

[3] And, as discussed below, Works' indigency and other factors show that the evidence was not reasonably available to him at the time of the hearing.

[4] Listing 1.04A is met where there is "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with

an inference that Works has been disabled since his alleged onset date in 2002, the reports do appear to suggest that the degradation in Works' condition occurred over a long period of time, and not simply within the few intervening months between the evaluations and the ALJ's decision.  (*e.g.*, Tr. 235 (noting multiple "degenerative changes" in Works' discs); Tr. 240 (noting that identified conditions are "now at a late stage and chronic …"); *see also supra* at 7-8).  The Court finds that, coupled with the other medical evidence and hearing testimony discussed above, had this new evidence been available to the ALJ at the time of her decision, there is a "reasonable probability" that she would have reached a different conclusion.

Finally, the Court finds that good cause exists for Works' failure to present this evidence to the ALJ.  While some courts have concluded that indigency does not constitute good cause for a claimant's failure to present evidence to an ALJ, *see e.g. Young v. Colvin*, No. 12-245, 2013 U.S Dist. LEXIS 122500 (E.D. Tenn. Aug. 28, 2013), this Court finds that, on this record, Works' indigency, consistently represented as presenting a barrier to treatment of his many conditions, satisfies the good cause requirement.  Indeed, on several occasions before the ALJ, as noted above, Works reported and testified to his indigency and the effect it had on his ability to receive tests, such as an MRI, as well as medications for some of his conditions.  (Tr. 36-37, 145, 216).  The Court further notes that doctors, not patients, order tests to be performed, and patients have limited control over when those tests can be scheduled.  *See Saylor v. Comm'r of Soc. Sec.*, No. 11-157, 2012 U.S. Dist. LEXIS 25407, *34-35 (W.D. Mich. Feb. 10, 2012) (citing *Stubbs v. Apfel*, No. 97-7069, 1998 U.S. Dist. LEXIS 13402 (N.D. Ill. Aug. 18, 1998).  Because the Court

---

associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Listing 1.04C is met where there is a diagnosis of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

finds that Works has satisfied the requirements for a Sentence Six remand, it recommends that this case be remanded to the ALJ for further consideration, including consideration of the medical records of Dr. Jurado and the February 2012 MRI.[5]

## III.   CONCLUSION

For the foregoing reasons, the court **RECOMMENDS** that Works' Motion for Summary Judgment **[7]** be **GRANTED IN PART** to the extent it seeks a remand pursuant to Sentence Six, and **DENIED IN PART** to the extent it seeks an outright reversal and award of benefits, the Commissioner's Motion **[11]** be **DENIED** and this case be **REMANDED** to the ALJ for further consideration consistent with this Report and Recommendation.

Dated: June 18, 2014                          s/David R. Grand
Ann Arbor, Michigan                           DAVID R. GRAND
                                              United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*,

---

[5] Because the Court agrees that this case should be remanded for further consideration pursuant to Sentence Six of the Act, it does not pass on the other alleged errors cited in Works' brief. However, on remand, the Court recommends that the ALJ consider the effect, if any, of Works' uncontrolled Type II diabetes and hypertension on his ability to perform substantial gainful activity during the relevant period.  To that end the Court notes that in his summary judgment motion, Works writes that at the time of the hearing, he was "having kidney failure in part, because of his uncontrolled hypertension [and diabetes]…Works has subsequently had to undergo kidney dialysis and has been disabled by the SSA under a new application."  [7 at 3, fn. 1; *id.* at 6, fn. 7].

14

638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 18, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager